RICHARD E. GRAY,                    )    No. C 05-3597 CW (PR)
                                    )
            Petitioner,             )    ORDER DENYING PETITION FOR
                                    )    WRIT OF HABEAS CORPUS
      v.                            )
                                    )
SCOTT KERNAN, Warden,               )
                                    )
            Respondent.             )
_____    )

INTRODUCTION

     Petitioner Richard E. Gray, a state prisoner incarcerated at
the California State Prison - Folsom at Represa, California, filed
this pro se petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254 challenging on several grounds the validity of his
conviction.

     Respondent has filed an answer.  Petitioner has filed a
traverse.  Having considered all of the papers filed by the
parties, the Court DENIES the petition on all claims.

BACKGROUND

I.   Procedural History

     According to the allegations in the petition, on May 21, 2003,
an Alameda County jury found Petitioner guilty of one count of
first degree murder.  The jury found true the enhancements for
discharging a firearm and being a felon in possession of a firearm.

     On August 22, 2003, Petitioner's trial counsel filed a motion
for a new trial.  On the same day, he withdrew as trial counsel
after Petitioner filed a state habeas petition alleging ineffective
assistance of counsel on his part.

On November 13, 2003, Petitioner's newly-appointed trial counsel filed another motion for a new trial.

On November 14, 2003, both motions for new trial were denied. On that same date, the trial court found true Petitioner's prior strike allegation, and sentenced Petitioner to state prison for eighty years to life pursuant to California's Three Strikes law.[1]

Petitioner's direct appeal was denied by the California Court of Appeal on December 9, 2004 in a reasoned unpublished opinion. (Resp't Ex. B.) On that same date, the appellate court issued a separate order denying Petitioner's state habeas petition. (Id.)

Petitioner then filed two separate petitions for review with the California Supreme Court, one addressing his direct appeal and the other addressing the habeas petition. Both petitions for review were denied summarily on March 16, 2005. (Resp't Exs. C, E.)

On September 7, 2005, Petitioner filed the present federal petition for a writ of habeas corpus. He raises the same claims

---

[1] California's Three Strikes law was enacted by the Legislature and became effective March 7, 1994. One provision of the law prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies. Cal. Penal Code § 667(d),(e). Specifically, § 667(e)(1) states that a second strike defendant, such as Petitioner, having one prior felony conviction, receives "twice the term otherwise provided as punishment for the current felony conviction." Here, the trial court sentenced Petitioner to twenty-five years to life on the murder, and then doubled that as a second strike to fifty years to life. The trial court then imposed a twenty-five years to life sentence for personal use of a firearm, which ran concurrent to the punishment for possession of a gun by a felon. The trial court also imposed a five year enhancement for the prior conviction of aggravated assault, for a total of eighty years to life. (CT 401-403, 414.) However, the parties state that Petitioner was sentenced to eighty-three years to life. (Pet. at 2; Answer at 2.)

for relief raised on direct appeal and in his state habeas petition: (1) claims related to CALJIC No. 4.50, the alibi instruction, including (a) ineffective assistance of trial counsel for failing to request the instruction and (b) trial court error for failing sua sponte to provide the instruction to the jury; (2) a claim of a violation of Brady v. Maryland, 373 U.S. 83 (1963), because the prosecutor and state judge concealed the result of the favorable plea bargain given to the jailhouse informant, Christopher Brown; and (3) a claim of trial court error in improperly excluding bad character evidence regarding the victim, Mario Edwards.

On November 14, 2005, Petitioner filed a request to amend his petition to add a declaration that in October, 2005, he received newly-discovered evidence from Brown, who had testified against him, as well as a statement and other records which show that the prosecutor forced Brown to testify falsely at trial. In an Order dated September 25, 2006, the Court denied Petitioner's motion to amend. The Court found that habeas relief was unwarranted based upon an actual innocence claim or any other claim relating to the newly-discovered evidence. (Sept. 25, 2006 Order at 3.)

Respondent filed an answer to the petition, and Petitioner filed a traverse. The Court now addresses the merits of Petitioner's claims.

II. Statement of Facts

In its written opinion, the California Court of Appeal summarized the factual background as follows:

> Keisha Dorsey testified that she lived with the victim, Mario Edwards, and his parents in Oakland. She stated that they intended to move to Oregon, but Edwards

3

violated his parole and he went to jail for five months. When she first moved to Oakland, Edwards introduced her to defendant, known as "Little Rick." After that, she saw defendant several times, "riding through the 'hood.'"

On August 14, 2001, Edwards, Dorsey, defendant and others were near a liquor store at 105th Avenue and Edes, across the street from a park. They were talking, smoking marijuana and drinking. Defendant, Edwards and another man were arguing about something that happened in jail. Dorsey heard them talking about selling fake drugs and the nature of the drugs in the neighborhood. When Dorsey next looked over, the three men were "playing and wrestling and stuff." Dorsey heard defendant tell Edwards if he needed a gun, he had one over in the park. Defendant pointed to a small bag by a trash can in the park.

After about 30 minutes, defendant and Edwards moved to the middle of the street and started arguing. Dorsey saw defendant push Edwards and Edwards punched defendant about three times. Defendant walked towards the trash can, and Edwards followed him saying, "[S]o, what, are you going to get your gun now?" Defendant turned around in the middle of the street and walked out of sight.

Later, Dorsey and Edwards saw defendant again in his car in front of the house where Dorsey and Edwards were sitting in the yard. Edwards asked defendant if he could smoke one of defendant's cigars and they shared a cigar. Defendant was acting normally, and left after that incident.

Dorsey and Edwards then walked up the street and saw defendant in a blue Honda with a girl. Defendant swerved and almost hit them. Defendant made a U-turn and came back. Defendant stopped and got out of his car. Edwards told Dorsey to keep walking because he wanted to talk to defendant.

Defendant walked up to Edwards and said: "I love you, man, but you was out of pocket for that shit you pulled earlier." Dorsey saw defendant facing Edwards and pointing a gun at his head. She described the gun as "kind of long" and "like an old-time gun." Dorsey said, "Little Rick, please don't shoot him." Defendant looked at Dorsey and shot Edwards in the head. Dorsey testified that she saw the bullet come out the back of Edwards' head and saw "guts and blood" hit the fence behind him. Defendant shot Edwards again, Edwards fell, and Dorsey turned to run. As she ran screaming toward Edwards' grandmother's house, she heard three more shots. She heard defendant drive off. Edwards' uncle,

Cameron, confirmed that when Dorsey got to the house, she told him that defendant shot Mario. Dorsey ran back to Edwards and stayed there until the police came.

Oakland Police Sergeant Christopher Shannon arrived at the scene of the shooting at 12:48 a.m. on August 15. He saw Edwards lying on his back with his head towards a fence and Dorsey, who was kneeling over him and crying. He observed blood and what appeared to be brain matter on the ground and the fence. Police pulled Dorsey off the victim and placed her in a patrol car. Shannon interviewed her, but she was distraught and hysterical. He asked her individual questions like: "The person that did this was white, Black, Hispanic?" She said the shooter was a Black male wearing a plaid shirt and light blue jeans, who left in an '80s compact, four-door dark blue [car].

Autopsy evidence showed that Edwards died of multiple bullet wounds. He had been shot in the back of the head, the left side of his back, his abdomen, and above his pubic bone. None of those bullets exited his body. He also had a bullet graze on his right thumb, and a group of what looked like bullet fragments in his left leg.

Defendant was charged with the murder of Edwards, with enhancements for discharge of a firearm, and personal discharge of a firearm which proximately caused great bodily injury. (§§ 187, 12022.53, subds. (c) & (d).) Count two charged possession of a firearm by a felon. (§ 12021, subd. (a)(1).) The information also alleged three prior convictions and one prior strike. (§§ 1170.12, subd. (c)(1), 667.5, subd. (b).)

Defendant's friend, Christopher Brown, was in jail for a May 4, 2001 burglary. Brown saw defendant in jail and asked one of the sheriffs to put him in the same cell with defendant. After talking with defendant, reading his preliminary hearing transcripts and police reports, and listening to Dorsey's taped statement, Brown contacted the police department to offer information about the shooting of Edwards.

. . . .

Brown testified that defendant told him that he shot Edwards three or four times because they had an argument. After Edwards punched him, defendant left and got a .357 caliber revolver at his cousin's house and returned to shoot Edwards. After the shooting, defendant called a friend of his father's named Screwdriver to come and get the gun. Brown supplied details of the crime that were not in the written documents, such as the fact that defendant loaded the

gun with .38 caliber bullets.

Mona Wilson testified that she lived near the scene of
the shooting and knew Edwards and Dorsey.  She had seen
defendant and knew him as Little Rick.  She was home on
August 14, and heard three or four shots.  She waited
for the shooting to stop and opened her door.  She saw
a person who looked Hispanic run to a brown Datsun, get
in and drive off.  She called the police.  When asked
if she was sure the person was Hispanic, she testified:
"That's what it looked like to me; didn't look like no
Black person."  She testified that she was positive the
person she saw was not defendant.  She remembered
saying previously that the person could have been
Hispanic or Black.  In her taped statement, she was
asked if it was defendant, and said, "I couldn't tell
you."  She denied describing the shooter as a
light-colored person with slicked-back hair.

Wilson was impeached with her statement to the police
on several points including whether she had purchased
crack from defendant or someone else that day.  In the
statement, she told police she saw defendant with a gun
that day and told him to leave.  Also, she testified
that she had never seen defendant wear his hair slicked
back, but admitted that the picture of defendant she
picked from a photo lineup showed him with his hair
slicked back.

Defendant testified on his own behalf.  He denied
having a gun the day of the shooting and denied
shooting Edwards.  He testified that he was in the park
waiting for his girlfriend Alfreda to pick him up.  She
was supposed to arrive around 5 p.m., but did not show
up until 9:00 p.m.  Defendant sold some drugs while he
was waiting.  When Alfreda picked him up around 9:00
p.m., they drove to her house and "kicked back" for the
rest of the night.  He denied ever discussing his case
with Brown.

Alfreda Nunnery testified that she picked defendant up
around 9:00 p.m. in her gray Honda that night.  They
spent the night at her house.  She was no longer
defendant's girlfriend and testified that she did not
like him enough to lie for him.

The jury convicted defendant of first degree murder,
possession of a weapon by a felon, and found the
enhancements to be true.  The court found the prior
convictions to be true.

(Resp't Ex. B at 1-5 (brackets in original).)

6

DISCUSSION

I.   Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in his petition.

II.  Standard of Review

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision. <u>Id.</u> at 412.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under § 2254(d) is of the last state court opinion to reach the merits. <u>Bains v. Cambra</u>, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Court of Appeal.

If no reasoned decision exists, an independent review of the record is the only means of deciding whether the state court's rejection of the claim was objectively reasonable. <u>See</u> <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S.

619, 638 (1993)).

2    III. Legal Claims

3        A.    Claims Regarding CALJIC No. 4.50

4        Petitioner claims that he was denied effective assistance of

5    counsel because his trial counsel failed to request CALJIC No.

6    4.50.  (Memorandum in Supp. of Pet. (Pet.) at 18.)[2]  The appellate

7    court identified the relevant portions of the alibi instruction as

8    follows:

9        [T]he standard instruction on alibi states:  the
         defendant in this case has introduced evidence for the
10       purpose of showing that [he][she] was not present at
         the time and place of the commission of the alleged
11       crime for which [he][she] is here on trial. If, after a
         consideration of all the evidence, you have a
12       reasonable doubt that the defendant was present at the
         time the crime was committed, you must find [him][her]
13       not guilty.

14   (Resp't Ex. B at 5.)

15       Petitioner also argues that the trial court's failure <u>sua</u>

16   <u>sponte</u> to provide the alibi instruction to the jury was per se

17   reversible error.  (Pet. at 16.)

18            1.    Ineffective Assistance of Trial Counsel

19                a.    Background

20       As a threshold matter, the appellate court found that

21   Petitioner's trial counsel's failure to request the alibi

22   instruction did not prejudice Petitioner.  (Resp't Ex. B at 6.)

23   The court applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in

24   denying Petitioner's claim:

25

26       [2] Petitioner relies on his state court briefing in support of his
     petition.  Attached to his "Memorandum of Points and Authorities and
27   Facts of Law in Support of Petition for Writ of Habeas Corpus" is the
     opening brief filed by his appellate attorney with the California
28   Court of Appeal.

Trial counsel did not request an alibi instruction.
His failure was the basis of the new trial motion filed
in the superior court.  In support of that motion,
counsel admitted that he did not request the
instruction.  The trial court confirmed that it would
have given the instruction had it been requested.

A defendant claiming that counsel was inadequate must
show that the challenged conduct was below the standard
of care to be exercised by a reasonably competent
attorney acting as a diligent advocate.  (People v.
Lewis (1990) 50 Cal.3d 262, 288; Strickland v.
Washington (1984) 466 U.S. 668, 688 (Strickland).)
Even when counsel's error is clearly shown and there is
no justification for the action, a defendant "must show
that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable
probability is a probability sufficient to undermine
confidence in the outcome." (Strickland, supra, 466
U.S. at pp. 693-694.)  Absent a demonstration of
prejudice, we need not consider whether counsel's
performance was deficient to reject defendant's claim
of ineffective assistance of counsel.  (Strickland,
supra, 466 U.S. at p. 697; In re Alvernaz (1992) 2
Cal.4th 924, 945.)

In this case, counsel's inaction was minor in light of
the circumstances of the case and the other
instructions given to the jury.  The court instructed
the jury that defendant was presumed innocent and was
entitled to a not guilty verdict unless the prosecution
met its burden of proving him guilty beyond a
reasonable doubt.  (CALJIC No. 2.90.)  The court also
gave the instructions on how to weigh credibility of a
witness, including the close scrutiny given to an
informant's testimony (CALJIC Nos. 2.20, 2.20.5,
2.21.1, 2.21.2, 2.22, 2.27), burden of proof (CALJIC
No. 2.90), and the factors to consider in assessing
eyewitness testimony (CALJIC No. 2.92).  The court also
instructed with CALJIC No. 2.91, regarding the burden
of proving identity based solely on eyewitnesses. That
instruction states:  "The burden is on the People to
prove beyond a reasonable doubt that the defendant is
the person who committed the crimes with which he is
charged."

"For the purpose of instructing with respect to an
alibi defense, it is sufficient that the jury be
instructed generally to consider all the evidence, and
to acquit the defendant in the event it entertains a
reasonable doubt regarding his or her guilt.
[Citation.]  Because the jury was so instructed in the
present case . . . defendant's contention lacks merit."
(People v. Alcala, (1992) 4 Cal.4th 742, 804.)

> Moreover, the jury necessarily understood that "alibi" was the defendant's defense. Defendant testified that he was elsewhere, and defense counsel argued that defense to the jury.
>
> Defendant's jury was able to properly assess and weigh the testimony of the various witnesses and knew that it must acquit if it found defendant was not present at the scene of the shooting. Defendant suffered no prejudice from the absence of the alibi instruction. Accordingly, any failure by counsel to request CALJIC No. 4.50 was not prejudicial.

(Resp't Ex. B at 6-7.)

### b. Applicable Federal Law

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland, 466 U.S. at 686. The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, that is, it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

**United States District Court**
For the Northern District of California

See <u>Strickland</u>, 466 U.S. at 689.  Because trial counsel's competence is presumed, the petitioner must rebut this presumption by demonstrating that counsel's performance was unreasonable under prevailing professional norms and was not the product of sound strategy.  <u>See</u> <u>id.</u> at 688-89.

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A court need not determine whether counsel's performance was deficient before examining the prejudice suffered as the result of the alleged deficiencies.  <u>Id.</u> at 697; <u>Williams v. Calderon</u>, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1124 (1996).

The <u>Strickland</u> framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  <u>See</u> <u>Williams</u>, 529 at 404-08.

c.  Analysis

Petitioner cannot establish that counsel was ineffective because he has not shown that there is a reasonable probability that absent counsel's alleged error the result of the proceeding would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. at 697; <u>Williams</u>, 52 F.3d at 1470 & n.3.

The appellate court carefully analyzed Petitioner's claim and determined that "any failure by counsel to request CALJIC No. 4.50 was not prejudicial" because Petitioner "suffered no prejudice from

12

the absence of the alibi instruction." (Resp't Ex. B, at 7.)
Under the circumstances of this case, and for the reasons explained
below, the appellate court's rejection of Petitioner's ineffective
of assistance of counsel claim was objectively reasonable.

The appellate court was reasonable in finding that, but for
counsel's failure to request CALJIC No. 4.50, the result of the
proceeding would not have been different. As the appellate court
explained, counsel's failure to request the alibi instruction "was
minor in light of the circumstances of the case and the other
instructions given to the jury." (Id. at 6.) Alfreda Nunnery
testified that she picked Petitioner up around 9:00 p.m. and that,
after picking him up, they spent the night at her house. Mona
Wilson testified that the man she saw running from the scene of the
shooting was not Petitioner. Petitioner also testified in his own
defense, and denied shooting Edwards. Additionally, Petitioner's
counsel argued at the close of trial that the prosecution's
witnesses should not be believed and that Petitioner was not
present at the scene of the crime. RT 1056-1092. The appellate
court also noted that the trial court instructed the jury on how to
weigh the credibility of a witness, on the presumption of
Petitioner's innocence, and on the prosecution's burden of proving
Petitioner guilty beyond a reasonable doubt. The jury nevertheless
determined that there was neither exculpatory information nor any
evidence that raised a reasonable doubt of Petitioner's guilt.

Accordingly, the Court finds that the appellate court's
decision was not "contrary to," or "an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court
of the United States" nor was it "based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Petitioner has failed to establish that he is entitled to habeas relief on the basis of his ineffective assistance of counsel claim.

   2.   Trial Court's Failure to Instruct the Jury <u>Sua Sponte</u> on CALJIC No. 4.50

   a.   Background

   Petitioner contends that the trial court erred by failing to instruct the jury <u>sua sponte</u> on the defense theory of the case, or, more specifically, CALJIC No. 4.50.  (Pet. at 17.)  He relies on <u>United States v. Washington</u> to support his allegation that the trial court's failure to provide the alibi instruction was per se reversible error.  819 F.2d 221, 225 (9th Cir. 1987) ("The district court must give an instruction regarding any legitimate theory of defense that is supported by the evidence, and a failure to do so is reversible error.").

   b.   Applicable Federal Law

   A federal criminal defendant is entitled to an instruction concerning his theory of the case if it is supported by law and some foundation in the evidence.  <u>See</u> <u>United States v. Mason</u>, 902 F.2d 1434, 1438 (9th Cir. 1990).  The Ninth Circuit has held that even if the alibi evidence is "weak, insufficient, inconsistent, or of doubtful credibility," the instruction should be given.  <u>United States v. Zuniga</u>, 6 F.3d 569, 570 (9th Cir. 1993) (citing <u>Washington</u>, 819 F.2d at 225).  An alibi instruction is critical because a juror, unschooled in the law's intricacies, may interpret a failure to prove the alibi defense as proof of the defendant's guilt.  <u>See</u> <u>Zuniga</u>, 6 F.3d at 570.  To avoid this possibility,

14

where alibi is the defense, a suitable instruction must be given when requested. See id. (citing United States v. Hoke, 610 F.2d 678, 679 (9th Cir. 1980)).

"No case, however, requires the trial court to give a sua sponte instruction on alibi; on the contrary, [Ninth Circuit] precedent establishes that failure to give an alibi instruction is not error if the defendant did not request such an instruction." See United States v. Loya, 807 F.2d 1483, 1493-94 (9th Cir. 1987) (holding that the district court's instruction that the jury need not find the crimes were committed on a certain date did not affect the fundamental fairness of the trial, despite defendants' evidence of alibi, where defendants did not request an alibi instruction); Lewis v. United States, 373 F.2d 576, 579 (9th Cir. 1967) ("The last error alleged is that no instruction on alibi was given. The short answer is that none was offered and none requested. . . . An exception exists in certain cases where the court, of its own volition, must deliver certain instructions; but this is not such a case.").

c.   Analysis

In rejecting Petitioner's claim regarding the trial court's failure to instruct sua sponte, the appellate court reasoned:

> In People v. Freeman (1978) 22 Cal.3d 434, 437, 149 Cal. Rptr. 396 (Freeman), our Supreme Court made it clear that CALJIC No. 4.50 is not an instruction that a trial court must give sua sponte. As defendant recognizes, we (and the trial court) are bound by the decision in Freeman. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 20 Cal. Rptr. 321.) Although we recognize that alibi was the only defense, that fact does not generate a sua sponte duty in light of Freeman.

(Resp't Ex. B at 6.)

Petitioner argues that _Freeman_ should be reconsidered, and that CALJIC No. 4.50 should be deemed an instruction which must be given _sua sponte_. (Pet. at 16.) This argument is unavailing. A state prisoner can only seek the writ of habeas corpus on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In other words, habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of state law. _Estelle v. McGuire_, 502 U.S. 62, 67-68 (1991). Thus, Petitioner's claim runs afoul of the rule that "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." _Id._ at 67-68.

As noted above, it is likewise not reversible error under Ninth Circuit law for a trial court to fail to give an alibi instruction absent a defense request.

Further, the record indicates that Petitioner was not deprived of the legal framework needed to argue his only apparent defense. See _Zuniga_, 6 F.3d at 571-72. The trial court gave instructions regarding reasonable doubt, burden of proof, and the factors in regards to eyewitnesses.

Accordingly, the appellate court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. _See_ 28 U.S.C. § 2254(d)(1). Petitioner has failed to establish that he is entitled to habeas relief on the basis of this claim.

B.    _Brady_ Violation

Petitioner claims that the prosecutor violated _Brady_ by concealing the result of Brown's favorable plea bargain. (Pet. at

16

25.) Petitioner also alleges that the state judge violated Petitioner's Fifth Amendment due process rights when "he, too, failed to disclose these facts and he failed to cause the prosecutor to disclose these facts." (Id. at 29.)

Petitioner did not raise his Brady claim on direct appeal. The appellate court did not provide a reasoned opinion regarding Petitioner's Brady claim but stated in a footnote:

> [Petitioner] filed a petition for writ of habeas corpus in case number A106749 raising issues concerning his trial. The petition fails to state a prima facie case. Concurrently with the filing of this opinion in the instant case, we have filed an order denying appellant's petition for writ of habeas corpus.

(Resp't Ex. B at fn. 2.)

The California Supreme Court summarily denied the claim. (Resp't Ex. E.) Because there is no reasoned decision on this claim, the Court will conduct an independent review of the record to determine whether the state court's rejection of the claim was objectively reasonable. See Himes, 336 F.3d at 853.

　　　　1.　Background

The appellate court summarized the facts relating to Brown's plea bargain and testimony at trial as follows:

> Brown knew he was facing a 19-year sentence for the burglary and his prior felony convictions. He reached an understanding with the prosecutor that if he testified and pled guilty to burglary, the prior convictions and probation violation would be dropped and his maximum sentence would be six years. He agreed to testify against defendant in an attempt to get a sentence less than six years. He knew it was possible that he could be sentenced to six years in prison or placed on probation. Brown admitted that he testified, not because he was trying to be a good citizen or was concerned about the victim, but only to "get home sooner." He knew that his agreement with the authorities depended on his testimony at the trial and

acknowledged that it was a good incentive.
(Resp't Ex. B at 3-4.)

Petitioner claims that Brown was sentenced on "the 'morning session' of Wednesday, May 21, 2003, while Petitioner's jury was deliberating next door." (Pet. at 26.)

The record shows that Brown received a suspended sentence of seven years and four months in state prison. (Pet'r Ex. B, Reporter's Transcript of Sentencing in <u>People v. Brown</u>, Alameda County Superior Court Case Nos. 137409, 142239, at 5.) Brown was placed on probation for five years, conditioned on serving one year in the county jail and paying $640.00 restitution to the victims. (<u>Id.</u> at 6.)

Petitioner states that, "Because Brown's time served exceeded the probationary sentence of one year in county jail, Brown was released from jail that day or the next day." (Pet. at 26.) Petitioner claims that Brown's testimony showed that he "expected a significant prison sentence of up to six years." (<u>Id.</u> at 25.) Petitioner argues that Brown testified that he did not expect to be sentenced to straight probation. (<u>Id.</u>) Therefore, Petitioner claims that the prosecutor "deliberately concealed, and deliberately failed to disclose, that Brown was given a lesser sentence than he told the jury." (<u>Id.</u> at 28.)

In support of the prosecutorial misconduct claim, Petitioner argues that he "should have been able to argue to the jury" that:

> (1) the prosecutor caused Brown to believe all along that he would most likely receive probation as part of his plea agreement; (2) Brown lied when he denied any expectation of probation and testified that he would probably serve six years in prison; (3) the prosecutor committed misconduct when she caused and allowed Brown

18

United States District Court

For the Northern District of California

to testify falsely that he would probably get six years
in prison and when she failed to correct his testimony;
and (4) these lies case [sic] serious doubt on the
veracity of Brown's testimony implicating Petitioner.

(Id. at 28-29.)

Petitioner also argues that "the trial court judge similarly
violated his Fifth Amendment due process rights" because he failed
"to cause the prosecutor to disclose these facts." (Id. at 29.)
In essence, Petitioner alleges that the state judge committed
judicial misconduct by violating Brady when he failed to disclose
the result of the favorable plea bargain given to Brown. (See id.)

2.    Applicable Federal Law

Due process requires the prosecutor to disclose information
that might create a reasonable doubt, that is, information that
might lead to discovery of favorable evidence "material either to
guilt or to punishment." Brady, 373 U.S. at 87. "Evidence is
material only if there is a reasonable probability that, had the
evidence been disclosed to the defense, the result of the
proceeding would have been different. A reasonable probability is
a probability sufficient to undermine confidence in the outcome."
United States v. Bagley, 473 U.S. 667, 682 (1985); see also United
States v. Agurs, 427 U.S. 97, 103-07 (1976) (holding constitutional
standard of materiality imposes higher burden on defendant than
ordinary harmless error standard).

A violation will be found under Brady if the favorable
evidence could reasonably be taken to put the whole case in such a
different light as to undermine confidence in the verdict. See
Kyles v. Whitley, 514 U.S. 419, 435 (1995).

There are three components of a Brady violation:  "'[t]he

19

evidence at issue must be favorable to the accused, either because
it is exculpatory, or because it is impeaching; that evidence must
have been suppressed by the State, either willfully or
inadvertently; and prejudice must have ensued.'"  Banks v. Dretke,
540 U.S. 668, 691 (2004) (quoting Strickler v. Greene, 527 U.S.
263, 281-82 (1999)).  Such evidence is material "'if there is a
reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different.'"
Strickler, 527 U.S. at 280 (quoting Bagley, 473 U.S. at 682); see
also Kyles, 514 U.S. at 433-34.

A claim of judicial misconduct by a state judge in the context
of federal habeas review does not simply require that the federal
court determine whether the state judge committed judicial
misconduct; rather, the question is whether the state judge's
behavior "rendered the trial so fundamentally unfair as to violate
federal due process under the United States Constitution."
Duckett, 67 F.3d at 740 (citations omitted).  A state judge's
conduct must be significantly adverse to a defendant before it
violates constitutional requirements of due process and warrants
federal intervention.  See Garcia v. Warden, Dannemora Correctional
Facility, 795 F.2d 5, 8 (2d Cir. 1986).

c.   Analysis

Based on an independent review of the record, the Court finds
that Petitioner has not shown that the prosecutor or the state
judge violated Brady or denied him his fundamental right to present
a defense.

The record shows that the jury was aware that Brown was

20

testifying in hopes of a favorable sentence. RT 390-395. On cross-examination, Brown never told the jury that he would not receive probation; instead, he testified that he did not know what sentence the state judge would give him:

> Q [Defense Counsel]: And the deal you made for yourself was you could even get straight probation, isn't that part of the deal?
>
> A [Brown]: No.
>
> Q: Doesn't it say that the judge could give you anything from probation up to the maximum of six years?
>
> A: Oh, yes.
>
> Q: Yes. You might even be hoping that you might get probation; right?
>
> A: I don't know what the judge is going to do.

RT 415-416.

Also during Brown's cross examination, the state judge made clear that straight probation was a possible sentence for Brown when explaining the plea bargain to the jury as follows:

> [Brown] was facing two years, four years or six years in prison for burglary. I'm taking judicial notice of this. Having a strike prior, that made it a possibility of four years, eight years or 12 years for burglary; thus, because it was a strike prior, it could go for 12 years in prison. Because he also had this prior that was a strike, and a serious felony, that could and would require adding five years to that for a total of 17 years. He has indicated he thought it was 19 years. Any of the other priors that resulted in State prison could add one year, for a total of 19 years in State prison. Because it is a strike, he would have to do 80 percent of that prison time.
>
> It is my understanding the District Attorney dismissed all of the priors, therefore, he will not get twice the time. He will not have to do this time at 80 percent. He can get up to six years in prison. It does not have to be prison. Of course, no one can give him time back that he's already done, which by his testimony, and I believe close to the dates, he has already done over 20 months.

21

**United States District Court**
For the Northern District of California

> So the most he can get is six years in State prison
> now, and he can get up to half of that time good time,
> work time off, and he goes to prison. He does not have
> to go to prison. The District Attorney's Office, I do
> not believe, would object to any sentence including
> probation at this point as part of the deal. And it is
> expected I am to consider whether or not he has been a
> cooperative and a truthful witness.

RT 419-420.

Therefore, the Court finds that neither the prosecutor nor the state judge committed a Brady violation. Petitioner has not provided any specific exculpatory facts or evidence that he alleges should have been timely disclosed in order to show that the state appellate court's decision was objectively unreasonable.

Accordingly, Petitioner is not entitled to habeas relief on his Brady claim. The appellate court's summary rejection of this claim was not contrary to or an unreasonable application of clearly established federal law, see 28 U.S.C. § 2254(d)(1), nor was the decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); Strickler, 527 U.S. at 292.

C.    Exclusion of Evidence Regarding the Victim

Petitioner claims that his Sixth Amendment right to present a meaningful defense was violated when the trial court prevented him from introducing bad character evidence that Edwards, the victim, was a drug dealer. (Pet. at 36.)

1.    Background

Petitioner claims that the purported evidence would have allowed the jury to infer that: (1) Edwards lived a violent drug-dealing life; (2) he associated with similar drug-dealing characters; and (3) his lifestyle created the potential motive for

someone else to shoot the victim in the head. (<u>Id.</u>)

The trial court excluded the evidence based on its speculative nature and pursuant to California Evidence Code § 352, that the evidence was more prejudicial than probative. California Evidence Code § 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352.

On direct appeal, the appellate court rejected the claim. The court summarized the factual findings and legal conclusion regarding this claim as follows:

> Defendant argues that the trial court erred by excluding evidence that crack cocaine was found near Edwards' body and that Edwards made his living as a crack cocaine dealer. He contends that this evidence supports his defense that he was not the shooter by showing that Edwards lived the violent life style of a drug dealer, and could have been shot by some other violent person related to drug dealing. Exclusion of this evidence was within the court's discretion.
>
> The court excluded the evidence based on its speculative nature and under Evidence Code section 352, stating that it was more prejudicial than probative. "[T]he application of ordinary rules of evidence like Evidence Code section 352 does not implicate the federal Constitution, and thus we review allegations of error under the 'reasonable probability' standard of [<u>People v. Watson</u> (1956) 46 Cal.2d 818 (<u>Watson</u>)]." (<u>People v. Marks</u> (2003) 31 Cal.4th 197, 227.) Under <u>Watson</u>, <u>supra</u>, we affirm unless there is a reasonable probability the verdict would have been more favorable but for the error.
>
> Defendant notes that cocaine was found on the sidewalk "near" the victim. In fact, the court stated that it had been told informally that the cocaine was one small rock 20 feet away from the body. Defendant did not indicate this information was inaccurate. Edwards had

no drugs in his system when he was shot. The probative value of a slight amount of cocaine so far from the body is speculative. In addition, the jury was not shielded from the fact that the victim was involved with drugs.

Defendant also argues that he should have been allowed to establish that Edwards was a crack cocaine dealer. The testimony leading up to the question about Edwards began with defendant admitting that he was in the park selling rock cocaine. He stated that he never saw problems between people in the park who sold drugs. When asked if there were others in the park doing the same thing he said, "Yes." Counsel asked: "What about Mario, do you know how he earned a living, if he earned one?" The court sustained an objection. Counsel then asked: "So when you were hanging out there in the park, you told us there were other people similar to you out there. Was Mario out there?" Defendant answered that Mario was there "from time to time." Despite the court's ruling on the previous question, the entire exchange indicated the victim's drug connections.

In addition, the jury heard other evidence about the victim's character. Dorsey testified that Mario Edwards went to jail on a parole violation. Wilson told police that Edwards sometimes sold drugs in the park. A transcript of her statement was given to the jury.

The evidence at issue involved a negligible amount of cocaine found a distance away from the body, and was offered for the speculative purpose of showing the victim was engaged in drug dealing. Although the court sustained one objection, the jury heard other evidence of the victim's involvement with drugs. There was no evidence that the shooting was drug related. There was no evidence connecting an unknown assailant with a drug purchase. Although we do not find that exclusion of the evidence was error, we conclude from our review of the entire record that a more favorable verdict was not reasonably probable if the evidence had been admitted.

(Resp't Ex. B at 8-9 (brackets in original).)

        2.    Applicable Federal Law

     The Due Process Clause does not guarantee the right to introduce all relevant evidence. See Montana v. Egelhoff, 518 U.S. 37, 42 (1996). A defendant does not have an unfettered right to offer evidence that is incompetent, privileged or otherwise

24

inadmissible under standard rules of evidence. <u>See</u> <u>id.</u> The exclusion of evidence does not violate the Due Process Clause unless it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." <u>Id.</u> at 43 (quoting <u>Patterson v. New York</u>, 432 U.S. 197, 201-02 (1977)) (internal quotations omitted). Therefore, the defendant must establish that his right to have the jury consider the excluded evidence in the case was a "fundamental principle of justice." <u>See</u> <u>id.</u>

One of the fundamental rules that may be violated by the erroneous exclusion of critical, corroborative defense evidence is the Sixth Amendment's right to present a defense. <u>DePetris v. Kuykendall</u>, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973), and <u>Washington v. Texas</u>, 388 U.S. 14, 18-19 (1967)); <u>Chia v. Cambra</u>, 360 F.3d 997, 1003 (9th Cir. 2004).

When deciding whether the exclusion of evidence violates this right, a court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) the reliability of the evidence; (3) the capability of evaluation by the trier of fact; (4) the cumulativeness of the evidence; and (5) the importance of the evidence in defendant's attempted defense. <u>Id.</u> at 1004. The court also must give due weight to the State's interests underlying its evidentiary rules on which the exclusion was based. <u>See</u> <u>id.</u> at 1006.

Even if exclusion of the evidence amounts to constitutional error, in order to justify federal habeas relief, the erroneous

25

exclusion must have had "a substantial and injurious effect" on the verdict. <u>Brecht</u>, 507 U.S. at 623.

### 3. Analysis

The probative value of the evidence was not central to the issues. As the appellate court explained, Petitioner's assertion that rock cocaine was found near Edward's body was incorrect because there was only a slight amount of cocaine twenty feet away from the body. (Resp't Ex. B at 8.) The evidence, even combined with evidence that Edwards was a drug dealer, was not probative of an otherwise unsupported theory that an unidentified drug dealer other than Petitioner could have killed him. Further, evidence of the victim's drug-dealing was not completely excluded because the jury heard that Petitioner's alibi witness told police that the victim sometimes sold drugs in the park. (<u>Id.</u>) And the jury heard testimony from Petitioner that he was in the park selling rock cocaine and that "from time to time" the victim also visited the park to sell drugs. (<u>Id.</u>)

The exclusion of evidence did not violate Petitioner's constitutional rights. Even if the exclusion of the evidence had amounted to constitutional error, Petitioner would not be entitled to federal habeas relief because it cannot be said that the exclusion had a substantial and injurious effect on the jury's verdict. <u>See Brecht</u>, 507 U.S. at 637. The excluded evidence would have had little impact on the jury in light of the other substantial evidence of guilt presented at trial. Petitioner has failed to establish that he is entitled to habeas relief on the basis of this claim.

Accordingly, the appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts. <u>See</u> 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims. The Clerk of the Court shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/14/08

CLAUDIA WILKEN
United States District Judge

GRAY,

          Plaintiff,

  v.

KERNAN et al,

          Defendant.
_____/

Case Number: CV05-03597 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 14, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

John Raikes Vance
State of California Attorney General's Office
455 Golden Gate Avenue
Suite 11000
San Francisco,  CA 94102-7004

Richard  Gray P-12240
CSP-Folsom
P.O. Box 2900066
Repressa,  CA 95671-0066

Dated: March 14, 2008

                                    Richard W. Wieking, Clerk
                                    By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California